DUFORD *et al. v.* PATRICK.

*(Supreme Court, General Term, Fourth Department. July, 1891.)*

1. CONTRACTS—PERFORMANCE—ACCEPTANCE OF SUBJECT-MATTER.
    Plaintiffs contracted to sell and furnish to defendants cut stone of such size and quality "as shall pass inspection by the state engineer in charge" of the work for which the stone was required. Plaintiff cut and furnished a large quantity of stone to defendant, who received the same without complaint that any of it had failed to pass inspection. *Held*, in default of such complaint, that plaintiffs were entitled to recover the contract price of the stone.

2. SAME—SUBJECT-MATTER—ACTUAL MEASUREMENTS.
    The contract provided "that the courses of stone shall run from 12 to 29 inches thick," but there was no other provision relating to the measurement; and the state for which the work in which the stone was used was being done, required the stone to be not less than 12 inches thick. *Held*, that defendant, having received the stone placed upon cars, and accepted the same, should be required to pay for the quantity actually furnished, though in excess of that required for the work.

·3. SAME—DEFECTIVE WORK—INSTRUCTIONS.

Defendant having introduced evidence to show that some of the stones were cut winding and uneven, and would not lay without recutting, the court properly instructed the jury that "so far as that work was necessary to be done, growing out of the defective character of the stone when delivered, the defendant would be entitled to recover damages therefor."

Appeal from circuit court, Oswego county.

Action by Francis Duford and Francis A. Duford against William Patrick. From a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial, defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Avery & Merry*, for appellant.    *Brown & Adams*, for respondents.

HARDIN, P. J. On the 14th day of August, 1888, the plaintiffs entered into a contract with the defendant, in which they "agree to sell and furnish to said party of the second part all cut stone for use by said party of the second part in lengthening guard lock number three (3) and lift lock number eleven (11) of the Oswego canal, at the following prices, viz., ten and 75-100 dollars ($10.75) per cubic yard; said stone to be delivered on board the cars at Chaumont, N. Y., and all of said stone to be so delivered on or before the 15th day of December, 1888. It is mutually agreed that all of said stone shall be of such size and quality as shall pass inspection by the state engineer in charge of said work." After the execution of the contract, the plaintiffs commenced getting from the quarry and to the railroad and into cars, apparently furnished by the defendant, stone for the uses mentioned in the contract. The stone were transported to a point about two miles from the locks where they were to be used, and from that point they were hauled by teams to the locks, and were used in carrying forward the work which the defendant had undertaken. It appears an inspector was placed in the quarry to examine the stone before they were placed upon the cars, and it appears that the defendant caused the stone to be inspected by the state engineer or his agent at the time, and after the same were placed in the locks. There was a conflict on the trial in the evidence as to the quantity of stone furnished by the plaintiffs, and as to the proper mode of measuring the same. There was also some evidence of some extra stone furnished by the plaintiffs for the defendant, which they received, and which were not embraced within the contract. The testimony is that the fair value of the extra stone is $183.67. The testimony of one of the plaintiffs is to the effect that 924,682 yards of stone were furnished under the contract, and that at the contract price the amount to be received therefor was the sum of $9,930.33. One of the plaintiffs testified that the defendant had paid on account of the stone $8,948.50, and he testified that the balance unpaid, with the extra stone, was $1,194.49, and he also testified that the stone were all delivered on the cars at Chaumont, consigned to the defendant at Fulton, and that in an interview subsequently held with the defendant he made no complaint that the stone did not arrive in time. However, upon the trial the defendant took the position that the contract bound the parties to place the stone on board the cars on or before the 15th of December, 1888. In answer to this position, there was testimony that delays were occasioned by reason of the failure of the defendant to furnish cars for the transportation of the stone, and that there were heavy storms in the winter, which interfered with carrying forward the shipments, and that the defendant continued to call for the stone, and to receive the same, and to accept them under the contract, and to use them in the construction of the locks mentioned in the contract.

Whitbeck, the engineer in charge of the locks, was repeatedly at the locks, supervising the construction of the same, and he testifies that about the 12th or 13th of April he saw one of the plaintiffs at Fulton, who had his books there, and that they were examined for the purpose of arriving at the amount

of stone that had been shipped under the specifications, and that they spent the greater part of two days figuring up and arriving at the amount of stone which had been delivered; and he stated the amount of stone which were placed in the locks under the specifications for completing the same at 841 yards, and that that was all that was required to complete the locks.  However, he adds: "We had stone over after the lock was completed.  *  *  *  I don't mean to say that there were not more than 841 yards delivered there by plaintiff, but that all the specification required him to deliver was 841 yards. The rest he delivered there were in excess of that, outside the specifications." This witness also testified that "there was an inspector at Chaumont under the direction of the superintendent of public works.  The state had an inspector in the quarry.  He inspected the stone before they were shipped to Fulton, and put his mark on the stones.  They were all subject to my inspection after they come, even after he has inspected them.  He inspected and marked the stone, so I knew the stone he had passed.  The superintendent of public works had an inspector representing his department at the quarry, who inspected the stone at the quarry, and marked them."  This witness further testified "that he supposed these stones that were consigned to Patrick were received by him, as far as I know.  There were some surplus stone left after the completion of the locks."  Evidence was given to the effect that "the defendant was to furnish cars for us to load.  The defendant never said anything or made any communication to Duford & Son about the inspection of the stone after they were delivered.  The defendant made no complaint to us that the stone were being cut out of order, or not true, or anything of that kind."  We think sufficient evidence was given upon the trial to bring the case within the doctrine laid down in *Delafield* v. *De Grauw*, *42 N. Y. 467. In that case a quantity of cement was sold, subject to the inspection of the United States inspector, and it was claimed some 300 barrels did not pass inspection.  The defendant, however, neither gave notice to the plaintiffs of this fact, nor returned the cement; and the report of the case states that "in an action to recover the balance of contract price for the cement delivered, it was held that it was the duty of the defendant, upon refusal of the government inspector to pass the cement, to have returned the same, or to have notified plaintiffs of the fact, and where the same were stored subject to their order.  Having neglected to do any of these things, he had no cause of action or counter-claim against the plaintiffs upon the ground that the cement did not pass inspection."

During the trial the court ruled that in measuring the stone in this case the actual measurements would be taken, and to that ruling the defendant excepted.  The provision in the contract is to the effect: "It is mutually understood and agreed that the courses of stone shall run from twelve to twenty-nine inches thick."  The contract contains no other provisions relating to the measurement of stone.  It seems the state required the stone to be not less than 12 inches; and under the circumstances the defendant, having received the stone placed upon cars, and accepted the same, he should be required to pay for their actual measurement.  There was some evidence given upon the trial that some of the stone were cut winding, and were not level, and they would not lay without recutting, because they would not fit the courses they were intended for.  During the charge delivered by the court the jury were instructed that "so far as that work was necessary to be done growing out of the defective character of the stone when delivered at Chaumont, the defendant would be entitled to recover damages therefor."  We think all the questions of fact were carefully and cautiously submitted to the jury by the learned trial judge, in a charge well calculated to direct the minds of the jury to the important questions involved in the case; and the charge was unexceptionable,—no exceptions were taken to it; and that the verdict is sustained by the evidence.  Judgment and order affirmed, with costs.  All concur.